FILED
SUPERIOR COURT
OF GUAM

2024 NOV 12 PM 3: 15

CLERK OF COURT

BY:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **JUAN CAMACHO PANGELINAN,** | **CIVIL CASE NO. CV0310-20** |
| **Plaintiff,** | |
| vs. | |
| **ANNIE SALAS LUJAN and MANUELA LUJAN BARBA nka MANUELA B. ROBLES,** | **DECISION AND ORDER DENYING DEFENDANT ANNIE LUJAN'S MOTION FOR SUMMARY JUDGMENT** |
| **Defendants.** | |

This matter came before the Court on a Motion for Summary Judgment ("MSJ"), filed by Defendant Annie Salas Lujan ("Lujan"). Present at the hearing was Plaintiff Juan Camacho Pangelinan ("Pangelinan") with counsel Attorney Jeffrey A. Cook, Attorney Braddock J. Huesman ("Huesman") on behalf of Lujan, and Attorney Vincent Leon Guerrero on behalf of Defendant Manuela B. Robles ("Robles"). Upon review of the record, arguments, and applicable Guam law, the Court hereby **DENIES** Defendant Lujan's MSJ.

## BACKGROUND

Pangelinan filed a Complaint for Constructive Trust filed on April 13, 2020 and a First Amended Complaint for Constructive Trust on September 14, 2020. Lujan filed a Rule 12(b)(6) Motion to Dismiss on November 12, 2020 ("First Motion to Dismiss") and Pangelinan filed his Opposition to the Motion to Dismiss on December 17, 2020. Lujan then filed a Reply to Opposition to Rule 12(b)(6) Motion to Dismiss on March 29, 2021. On August 10, 2021, this Court issued a Decision and Order granting the First Motion to Dismiss without prejudice and granting Plaintiff's request for leave to amend his First Amended Complaint.

On September 9, 2021, Pangelinan filed his Second Amended Complaint for Damages for Fraud ("Second Amended Complaint"). On October 4, 2021, Lujan filed the Motion to Dismiss Second Amended Complaint for Damages for Fraud ("Second Motion to Dismiss") supported by the Declaration of Annie Salas Lujan. Pangelinan filed an Opposition to Defendant's Second Motion to Dismiss Second Amended Complaint for Damages for Fraud on November 1, 2021 and Lujan filed a Reply to Opposition to Motion to Dismiss Second Amended Complaint on November 15, 2021. The Court heard oral argument on the Second Motion to Dismiss from Defendant Lujan and Plaintiff Pangelinan at the May 27, 2022 hearing. Because Pangelinan attached material outside the pleadings, the Court converted Lujan's Motion to Dismiss into a motion for summary judgment. On August 29, 2022, the Court issued a Decision and Order deciding that Pangelinan had sufficiently pled his fraud claim, denying the Second Motion to Dismiss, and ordering the Defendants to file and serve Answers.

On September 19, 2022, Lujan filed her Answer and Counterclaim.[1] Lujan's counterclaim alleged "fraudulent or negligent misrepresentation" against Pangelinan. Pangelinan filed his Reply to Lujan's Counterclaim on October 24, 2022. Lujan then filed her MSJ on November 20, 2023, and Pangelinan responded with an Opposition to Motion for Summary Judgment ("Opposition to MSJ") on February 14, 2024. On the same date, Pangelinan

---

[1] Robles filed a separate answer on September 30, 2022 titled "Answer of Manuela B. Robles"; a September 19, 2022 answer titled "Answer of Manuela B. Robles and Counterclaim and Demand for Jury Trial" that did not state a counterclaim against Pangelinan; and a September 16, 2022 answer titled "Answer of Manuela B. Robles." At the June 18, 2024 Hearing, Robles stated that the September 30, 2022 answer was the proper answer to be recorded by the Court. Min. Entry, at 2:50:45 (June 18, 2024). The Court additionally confirmed that Robles was not asserting a counterclaim against Pangelinan. *Id.* at 2:51:13.

filed a Declaration in Support of Opposition to Motion Summary Judgment and his Statement of Material Facts. On February 28, 2024, Lujan filed her Reply in Support of Motion for Summary Judgment ("Reply"). On the same date, Lujan also submitted her Statement of Issues and Statement of Undisputed Material Facts.[2] The Court held a hearing on Lujan's MSJ on June 18, 2024. After hearing from the parties, the Court took the matter under advisement.

## UNDISPUTED FACTS

Manuela Lujan Barba nka Manuela B. Robles ("Robles") was the sole heir of the Estate of her father Gregorio C. Barba, and entitled to inherit the property in the Estate of his grandfather, Juan Santos Camacho. Second Am. Compl. ¶ 4; Def.'s Stat. Mat. Facts at 2, ¶ 2. Defendant Lujan is Robles's mother. Second Am. Compl. ¶ 3; Def.'s Answer and Countercl. ¶ 3. As heir, Robles possessed an interest in three properties in the Estate of Juan Santos Camacho (the "Estate"). Second Am. Compl. ¶ 4 and 11; Mot. Summ. J. at 2.

In 2009, Lujan approached Pangelinan and his then-partner, Delbert Swegler ("Swegler"), now deceased, to ask if they wanted to buy Robles's share of the interest in the Estate. Second Am. Compl. ¶ 8; Def.'s Answer and Countercl. ¶ 8. Lujan communicated to Pangelinan and Swegler that she had a Power of Attorney ("POA") from Robles, and thus could

---

[2] On February 14, 2024, in Pangelinan's Opposition to MSJ, he filed his Statement of Material Facts and stated that Lujan's motion was defective because it did not comply with the Local Rules of the Superior Court of Guam Rule 56.1. Following the filing of the Opposition to MSJ, on February 28, 2024, Lujan filed her Reply in Support of Motion for Summary Judgment along with a Submission of Statement of Issues to be Decided by the Court and Statements of Undisputed Material Facts for Summary Judgment. Although Pangelinan filed his Statement of Material Facts in an attempt to comply with CVR 56.1, he did so without the benefit of reviewing Lujan's Submission. Accordingly, the Court issued an Order Setting Motion Hearing and Ordering Plaintiff to Respond to Defendant's Submission of Statement of Issues to be Decided on March 26, 2024. Order (March 26, 2024). Following the Order, Pangelinan filed his Response to Lujan's Submission of Statement of Issues on April 10, 2024.

negotiate on Robles's behalf. Second Decl. of Pl. Pangelinan, Ex. 2 "Depo. of Annie Lujan" at 24; *see also* Second Am. Compl. ¶ 7.

Pangelinan and Swegler agreed to purchase the interest in the Estate held by Robles for $577,608.00. Pl.'s Stat. Mat. Facts at 2; Mot. Summ. J. at 1 However, instead of payment up front, the parties agreed that Pangelinan would use his best efforts to sell the properties in the Estate and would use the proceeds to pay Lujan after the sale to the buyer closed. Mot. Summ. J. at 1; Second Am. Compl. ¶ 16. To facilitate the agreement, Pangelinan and Swegler provided a $10,000.00 check as a down payment for the purchase of Robles's interest in the Estate.[3] Second Am. Compl. at ¶ 10, Ex. 1; *see also* Def.'s Stat. Mat. Facts at 2, ¶ 3; Pl.'s Stat. Mat. Facts 1-2.

On March 11, 2010, Robles, through Defendant Lujan, deeded her interest in the Estate to Pangelinan and Swegler.[4] *See* Second Am. Compl. Ex. 2-4; *see also* Decl. Huesman in Supp. Mot. Summ. J. Ex. "C" at 8. On November 10, 2010, the three deeds for the properties in the

---

[3] Pangelinan also alleges that Lujan accepted partial payment of about $60,000 towards the purchase price. Pl.'s Opp. Mot. Summ. J. at 2; *see also* Second Decl. Pl. Pangelinan at ¶ 10. Lujan denies knowledge of the additional payments and claims that Pangelinan took back some of the $10,000 down payment. *See* Decl. Huesman in Supp. Mot. Summ. J. Ex. "C".

[4] These deeds were later deemed invalid by this Court in its August 10, 2021 Decision & Order for failure to comply with 21 GCA § 4105. Section 4105 requires deeds to subscribe both the name of the principal and the name of the agent, designating the agent as the attorney-in-fact. As the deeds only include one signature above Robles's typed name, they failed to meet the statutory requirements and were deemed void. The Court stated that although there can be no "enforcement of a void contract, the claim based on fraud may survive." Decision and Order (Aug. 10, 2021) at 9.

Furthermore, in this Court's August 29, 2022 Decision and Order, it emphasized again that although void, the deeds may be used to demonstrate evidence of an agreement. This Court explained that "although the statute of frauds may prevent a claim for enforcement of a contract, the statute of frauds will not apply to prevent claims of fraud based on justifiable reliance or unjust enrichment." Decision and Order (Aug. 29, 2022) at 12 (citing Aug. 10, 2021 D&O, at 13, 20).

Estate were recorded at the Department of Land Management, and Pangelinan and Swegler executed an Amended Promissory Note (the "Note"). Def.'s Stat. Mat. Facts at 2; *see also* Decl. Huesman in Supp. Mot. Summ. J. Ex. "D." The Note included two partial payments, with the remainder of the balance of the purchase price, five hundred seventy-seven thousand six hundred eight dollars ($577,608.00), payable after the sale. Mot. Summ. J. at 1; Second Am. Compl. ¶ 17-18, Ex. 5.

In 2017, a buyer purchased one of the properties of the Estate deeded to Pangelinan. Second Am. Comp. ¶ 17; Mot. Summ. J. at 4. Pangelinan alleges that pursuant to the Note and the agreement with Lujan acting on behalf of Robles through her POA, that he should receive the difference between what Robles received from the sale, and the price listed in the promissory note. Second Am. Comp. at ¶ 20; *see generally* Mot. Summ. J. However, Lujan has not distributed anything to Pangelinan. Second Am. Comp. at ¶ 40; Def.'s Stat. Mat. Facts at 2.

## DISCUSSION

The issue before the Court is whether to grant Lujan's Motion for Summary Judgment to dismiss the fraud claim brought by Pangelinan. *See* Submission of Statement of Issues; *see also* Pl.'s Resp. to Submission of Statement of Issues. Specifically, Lujan argues that Pangelinan is unable to meet the element of scienter in his fraud claim. *Id.* However, in her filings, Lujan appears to confuse the elements of scienter and intent and uses the two elements interchangeably.

In her Submission of Statement of Issues to be Decided by the Court, Lujan only submits the issue that Pangelinan "cannot produce evidence of scienter," and does not mention the element of intent altogether. Submission of Statement of Issues at 2. Additionally,

5

Pangelinan also only discusses the issue of scienter in his Statement of Issues without mention of intent. Pl.'s Resp. to Submission of Statement of Issues at 1-2.

However, in her MSJ, Lujan alleges that Pangelinan "adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise," but cites to language that discusses scienter in his argument[5] and only claims a lack of scienter in the Introduction. Mot. Summ. J. at 2 ("Mr. Pangelinan admits he has no proof of scienter"). She also incorrectly characterizes the two as the same element by stating "Mr. Pangelinan has no evidence of scienter—intent to defraud—because nonperformance of a promise does not suffice to show the knowledge of the falsity of the promise." Reply in Support of Mot. Summ. J. at 4.

Since only the issue of scienter was raised in the Submissions of Statement of Issues, and the majority of the case law that Lujan presented involves scienter, the Court will focus on the issue of scienter.[6]

---

[5] When describing intent, Lujan quotes in her MSJ that "fraud implies bad faith, intentional wrongdoing and a sinister motive [and] is never imputed or presumed," citing to *Gov't of Guam v. Kim*, 2015 Guam 15 ¶ 60. The full quotation in *Kim*, however, is about scienter:

> Fraud claims, however, are distinguishable because they involve a "knowledge of falsity (or scienter)" element. *See, e.g., Taitano v. Calvo Fin. Corp.*, 2008 Guam 12 ¶ 12. "Fraud implies bad faith, intentional wrongdoing and a sinister motive . . . [and] is never imputed or presumed." *Davis v. Comm'r*, 184 F.2d 86, 87 (10th Cir. 1950). The scienter element is the major distinction between fraud and contract law, and it is a reason to draw an exception for fraud under the economic loss doctrine.

*Gov't of Guam v. Kim*, 2015 Guam 15 ¶ 60.

[6] Lujan cites to one case that interprets the element of intent in her MSJ. In arguing that Pangelinan has only set forth evidence of Lujan's nonperformance, she states, "if [Mr. Pangelinan] adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury." Mot. Summ. J. at 7. However, in the case that Lujan relies on to make this argument, the court also held that "fraudulent intent must often be established by circumstantial evidence," and that "fraudulent intent has been inferred from such circumstances as . . . failure *even to attempt* performance . . . ." *Tenzer*

## I.     Motion for Summary Judgment Standard

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Guam R. Civ. P. ("GRCP") Rule 56(a). "A genuine issue of material fact exists when there is sufficient evidence to establish a factual dispute that must be resolved by a fact-finder." *Iizuka Corp. V. Kawasho Int'l (Guam) Inc.*, 1997 Guam 10 ¶ 7. "A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit . . . [d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *Id.* "There is a genuine issue, if there is 'sufficient evidence' which establishes a factual dispute requiring resolution by a fact-finder." *Guam Pac. Enter., Inc. v. Guam Poresia Corp.*, 2007 Guam 22 ¶ 8 (citations and internal quotation marks omitted).

In addition, when reviewing a motion for summary judgment, "the court must draw inferences and view the evidence in a light most favorable to the non-moving party." *Guam Sanko Transportation, Inc., v. Pacific Modair Corporation*, 2012 Guam 2 ¶ 7. "A movant bears the initial burden to show that undisputed facts in the record support a prima facie entitlement to the relief requested." *Hawaiian Rock Products Corp. v. Ocean Haus., Inc.*, 2016 Guam 4 ¶ 27. The Guam Supreme Court has held that a defending moving party may satisfy its moving burden "by showing there is an absence of evidence" to support a claim. *Guam Sanko Transportation, Inc.*, 2012 Guam 2 ¶ 7. It may also satisfy its burden by "producing evidence

---

v. *Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985)(emphasis added). *Tenzer* thus distinguishes cases where there has been an attempt to perform that ultimately fails, from cases where there has been a complete failure to attempt to perform. In the present case, Lujan has already admitted that she has never attempted to perform. *See* Def.'s Answer and Countercl. ¶ 40; Def.'s Stat. Mat. Facts at 2. Therefore, Lujan's argument is unsupported by *Tenzer*.

negating an essential element" or claim. *Id.* "If such a showing is made, however, the non-movant may not simply deny the allegations to create a factual dispute, but is obligated to set forth specific facts showing there is a genuine issue for trial." *Id.*; *see also Bank of Guam v. Flores*, 2004 Guam 25 ¶ 7 (finding that the non-movant must "produce at least some significant probative evidence to support the pleadings").

**II.     Lujan Seeks Summary Judgment to Dismiss Pangelinan's Claim of Fraudulent Misrepresentation Against Her for Lack of Evidence**

Under Guam law, the elements of fraud are: "(1) a misrepresentation; (2) knowledge of falsity (or scienter); (3) intent to defraud to induce reliance; (4) justifiable reliance; and (5) resulting damages." *Transpacific Export Co. v. Oka Towers Corp.*, 2000 Guam 3 ¶ 23.

Scienter is generally held to be one of the essential elements of actionable fraud. 37 C.J.S. Fraud § 39. A plaintiff in a fraud action may establish scienter, or knowledge of the falsity of a material representation, by showing that the defendants knew their statements were false, or by showing that defendants made false representations recklessly and without regard for their truth. *Yellow Creek Logging Corp. v. Dare,* 216 Cal. App. 2d 50, 56 (Ct. App. 1963); *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997); Restatement (Third) of Torts § 10 (2020).

Lujan moves for summary judgment alleging that Pangelinan presented no proof of scienter aside from the fact that "Ms. Lujan failed to perform her promise and pay him." Mot. Summ. J. at 2. Lujan argues that Plaintiff is unable to meet the burden for a fraud claim because evidence of failure to perform is insufficient to prove fraud. *Id.* at 7. Lujan instead purports that "this case is about enforcing a void contract," that Plaintiff is wrongfully characterizing as a fraud claim to recover damages that he would otherwise be unable to in a case involving a failed

contract. *Id.* at 6. Therefore, Lujan argues that there are no specific facts showing that a triable issue of material fact exists on Pangelinan's fraud claim, and requests summary judgment. *Id.*

Pangelinan counters that the case is not about a failed contract, but indeed about Lujan's fraudulent actions. Pl.'s Opp'n. Mot. Summ. J. at 2. He argues that Lujan misrepresented that she had POA and authority to sell Robles's interest in the property in order to induce him to work to sell the property, without ever intending to compensate him. *Id.* Pangelinan asserts that he relied on Lujan's misrepresentations, and that based on this reliance, he performed his obligations under the agreement by making his best efforts to sell the property, and that as a direct result of Lujan's fraudulent misrepresentations, he suffered damages in the amount of $339,058.66. *Id.*

His proposed facts that support a finding of scienter "include but are not limited to executing deeds as the agent of [Robles] and that [Robles] had knowledge of the transaction with Plaintiff; and continually telling Plaintiff that [Robles] was aware of the transaction and approved it." Pl.'s Resp. Submission of Statement of Issues at 2. To support his allegations, he provided evidence of "her signing the deeds as [Robles's] attorney-in-fact when she knew she did not have a Power of Attorney. . . [and] her lying in her deposition that she had a Power of Attorney from [Robles] to sell the property interest." Pl.'s Opp'n. Mot. Summ. J. at 3.[7]

---

[7] Lujan did not respond to Pangelinan's proposed evidence of scienter in her Reply. She continued to maintain that Pangelinan only asserts evidence of Lujan's failure to perform. Reply in Support of Mot. Summ. J. at 4.

III. **There Remain Genuine Issues of Material Fact Whether Lujan Had the Requisite Scienter for Fraud**

A. **Whether Lujan was Aware that She Lacked Authority to Sell Is Material Towards the Element of Scienter**

First, the Court finds that whether Lujan was aware that she did not have authority to sell Robles's interest in the Estate is a material fact. Under Pangelinan's theory, Lujan knew that she did not have POA over Robles but had repeatedly told Pangelinan and Swegler that she had authority to sell Robles's interest. Pl.'s Opp'n. Mot. Summ. J. at 2. Pangelinan contends that she misrepresented her authority in order to induce him and Swegler to purchase the interest and work to sell the property. *Id.* Further, this misrepresentation was material because they would not have purchased Robles's interest if they did not believe that Lujan had the authority to sell it. *Id.*

Although Pangelinan did not submit direct evidence that Lujan communicated to him that she had POA during negotiations, he has provided sufficient evidence to infer that she made such representations. *See Guam Sanko Transportation, Inc.,* 2012 Guam 2 ¶ 7 (". . . the court must draw inferences and view the evidence in a light most favorable to the non-moving party"). Pangelinan submitted excerpts of a deposition of Lujan from a separate case, Superior Court Civil Case No. CV0945-12, *Swegler v. Pangelinan* ("Lujan's Deposition") in which she admitted explicitly to signing the purchasing contract for her daughter "as a POA." Pl.'s Decl. in Support of Opp'n. Mot. Summ. J., Ex. 2. She also stated that she signed the deeds to the Estate on behalf of Robles. *Id.* Lastly, Pangelinan submitted a receipt for the $10,000 down payment signed by him, Swegler and Lujan that states in part "I, Annie Salas Lujan, entered

10

into this contract authorized by a Special Power of Attorney granted to me by my daughter, Manuela Lujan Barba." Pl.'s Decl. in Support of Opp'n. Mot. Summ. J., Ex. 1.

In actuality, Lujan has yet to produce evidence that she had POA and has only asserted that she believed she had authority to sell Robles's interest because Robles was a minor in 2009 during the June 18, 2024 Motion Hearing.[8] *See* Submission of Statement of Issues at 2; Min. Entry, at 2:22:12 (June 18, 2024). However, even assuming Robles was a minor in 2009, it is not enough to establish that Lujan had a reasonable basis to believe that she had authority to sell Robles's interest in the Estate. Furthermore, Lujan, through her attorney's arguments, stated at the June 18, 2024 hearing that she "believed she could do those things" without setting forth evidence that demonstrated she had a reasonable basis for her belief. Min. Entry, at 2:22:28 (June 18, 2024).

If a defendant makes false statements without reasonable justification for her belief that the statements are true, courts have found that the defendant possesses the requisite scienter for fraud. *See Lazar v. Superior Court,* 12 Cal.4th 631, 639 (1996)(finding scienter where an employer's false promises contradicted the company's policies and upcoming merger plans); *Engalla,* 15 Cal. 4th 951, 974 (finding scienter where a defendant company demonstrated reckless indifference to the truth based on a study showing that the company rarely complied with its promises; additionally, whether the company was aware of the findings in the study was immaterial); *McGough v. Gabus,* 526 N.W.2d 328, 331 (Iowa 1995)(finding scienter for reckless

---

[8] It was Attorney Huesman that claimed that Robles was a minor in 2009. Min. Entry, at 2:22:28 (June 18, 2024). However, nothing in Lujan's motion or declaration asserted that Robles was a minor in 2009, or that this was the basis of Lujan's belief that she had a POA. Additionally, it was previously provided to the Court that Robles became an adult on November 2, 2008, prior to the beginning of the negotiations in 2009. *See* Decision and Order at 2 (Aug. 10, 2024).

disregard for the truth where the defendant claimed a business was worth much more than the appraisal, even though he claimed he innocently misread the appraisal).

Lujan has not provided reasonable justification for her belief that she possessed POA. At the summary judgment stage, evidence is viewed in a light most favorable to the non-movant. The evidence that Pangelinan presented, when viewed in a light most favorable to him, supports a finding that Lujan was at least reckless in asserting that she had authority to sell Robles's interest. *See* Restatement (Third) of Torts § 10 (2020) ("The recklessness sufficient to support a claim of fraud occurs when a speaker acts in conscious disregard of a risk that a statement is false, as by offering it without qualification while knowing that it may well be untrue."). A fact-finder could still determine that Lujan's statements portraying that she had authority to sell Robles's interest through a POA constituted a reckless disregard for the truth. *See id.* Aside from her attorney stating that Robles was a minor at the time of negotiations, Lujan has not submitted any evidence that shows a basis in which she would believe she possessed POA over Robles. Neither has she asserted any reasonable grounds for believing that she could have had authority to sell Robles's interest. Thus, a fact-finder could determine that Lujan made false representations recklessly, satisfying the element of scienter.

For the following reasons, whether Lujan was aware that she lacked authority to sell Robles's interest is a material fact.

B.       **There Is Genuine Issue Over Whether Lujan Was Aware that She Lacked Authority to Sell Robles's Interest**

Next, the Court finds that there is genuine issue over whether Lujan was aware that she lacked POA to act on Robles's behalf. Both parties agree that there is a genuine issue regarding her awareness as well. Min. Entry, at 2:26:24 (June 18, 2024). At the hearing on June 18, 2024,

when asked whether it is disputed whether Lujan knew that she lacked POA, Lujan's counsel stated that "I think the parties clearly dispute whether she was lying." Min. Entry, at 2:26:50 (June 18, 2024). Lujan also reiterated her position that she had a good faith belief that she had the authority to sell Robles's interest, while Pangelinan reiterated that he believed Lujan knowingly misrepresented that she had POA. Min. Entry, at 2:28:24 (June 18, 2024); *see also* Pl.'s Opp'n Mot. Summ. J. at 3.

Furthermore, the evidence submitted by Pangelinan is sufficient to establish a factual dispute. Although the evidence submitted is not direct evidence of Lujan's state of mind, in totality, a reasonable trier of fact could infer knowledge of falsity from this circumstantial evidence. *See RSB Vineyards, LLC v. Orsi*, 15 Cal. App. 5th 1089, 1097 (2017)("[Plaintiff] did not provide any direct evidence of defendants' knowledge, but this is not unusual."); *Blanchard v. DIRECTV, Inc.*, 123 Cal.App.4th 903, 922 (2004)(". . . states of mind, can seldom be proved by direct evidence.").

In addition to the evidence that Lujan misrepresented that she had POA, Pangelinan also provided evidence that Lujan misrepresented that she had Robles's approval of her actions. In Lujan's Deposition in *Swegler v. Pangelinan*, in regards to the sale of Robles's interest, she stated, "So, I talked to my daughter; my daughter says okay." Pl.'s Decl. in Support of Opp'n. Mot. Summ. J., Ex. 2.

However, John C. Camacho, the administrator of the Estate of Juan Santos Camacho, submitted a declaration in the present case that contradicts Lujan's position. In his declaration, he states that in his first contact with Lujan, she "appeared very anxious and pleaded with [him] not to cut her daughter out of the list of heirs of the Estate." Decl. John C. Camacho at 2. Once

13

he learned of the Plaintiff's purchase of Robles's interest, "it became clear to [him] why Defendant Lujan was so anxious when [they] met." *Id.* at 3. However, when Camacho asked Robles about the sale to Pangelinan, she responded that she "had no such knowledge of this transaction." *Id.*

Based on the contradicting accounts of Robles's knowledge of the sale and Lujan's failure to present a reasonable basis for her to assert that she had a POA, Pangelinan has presented sufficient evidence to establish a factual dispute requiring resolution by a fact-finder. *See Guam Pac. Enter., Inc. v. Guam Poresia Corp.*, 2007 Guam 22 ¶ 8.

**C.  Lujan Is Not Entitled to Summary Judgment on Pangelinan's Fraudulent Misrepresentation Claim**

Lujan is correct to state that "[i]t is insufficient to show an unkept but honest promise, or mere subsequent failure of performance" as evidence of the alleged fraud," (quoting *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n.*, 291 P.3d 316, 325 (Cal. 2013)). However, Pangelinan has presented more evidence than merely Lujan's promise and failure to pay.[9] Pangelinan alleges that Lujan "represented that she had authority to sell Robles's interest; that she signed the deeds as Robles's attorney-in-fact when she knew she did not have POA; and that she lied in her deposition that she had POA from Robles to sell the property interest." Pl.'s Opp'n Mot. Summ. J. at 3.

---

[9] Defendant repeatedly raises that the case involves a void contract as opposed to fraud. However, a case may involve both fraudulent misrepresentation and a void contract; thus a void contract is not a defense to fraud. Restatement (First) of Torts § 525 (1938)(". . . one who fraudulently misrepresents himself as intending to perform an agreement is subject to liability in tort whether the agreement is enforceable or not.")

The Court finds that in light of the evidence provided, a genuine dispute of material fact remains on whether Lujan was aware that she lacked authority to sell Robles's interest. Therefore, the Court concludes that there remain fact-intensive inquiries best left to the trier of fact and cannot grant summary judgment.

## CONCLUSION

Based on the evidence as a whole and viewing the inferences in favor of the non-moving party, the Court finds that there are genuine disputes over material facts in the matter. For the above reasons, the Court hereby **DENIES** Defendant Lujan's Motion for Summary Judgment.

**SO ORDERED** this 12th day of November, 2024.

**HONORABLE DANA A. GUTIERREZ**
Judge, Superior Court of Guam